## Bibb, use, &c. *v.* Jones.

Where an execution was returned, "levied this and other *fi. fas.* on six slaves to make the sheriff's fees," it was held not to create a presumption of satisfaction.

It seems that a levy creates only a presumption of satisfaction, which may be explained by proof, that actual satisfaction was not received.

A junior judgment creditor is entitled to the money made by a levy and sale by virtue of his execution, and the purchaser takes the property subject to the lien of older judgments.

IN ERROR from the circuit court of the county of Lowndes.

This was a motion in the court below for the application of money made on execution by the sheriff, who returned the same into court, and asked for its judgment, as to which of the claimants was entitled to the money.

On the 9th day of October, A. D. 1838, Bibb, for the use of Holderness, obtained judgment against Wm. D. Amis, and T. J. Brownrigg, for four thousand two hundred and thirteen dollars and fifty cents, and costs of suit. Execution issued on this judgment, November 14th, 1838, returnable to the next term; this *fieri facias* was levied by the sheriff on the property of the defendants, and thereupon a forthcoming bond was given, and the same was forfeited on the 4th day of March, A. D. 1839, and returned into court at April term, 1839. On the 17th day of May, 1839, an *alias fieri facias* was duly issued on this forfeited bond to the sheriff, which *alias fieri facias* was returned to the next term with the following indorsement: "Received costs and commissions. Further proceedings stayed by order of attorneys. J. W. BYRNE, sheriff." On the 19th day of February, A. D. 1840, a *pluries fieri facias* was issued on this judgment to the sheriff, and the same was returned, "stayed by the attorney until the next term of the court," to the April term, 1840; on the 23d day of June, A. D. 1840, another *fi. fa.* was duly issued on this judgment

34*

to the sheriff: this *fi. fa.* was levied on property, and the same was duly sold on the 3d of August, 1840, from which sale the sum of five hundred and eighty-eight dollars and eighty-seven cents was raised and credited on the execution, and the execution was then returned, "no more property found," &c. to the October term, 1840; immediately after this term, on the 16th day of October, 1840, another *fi. fa.* was duly issued to the sheriff, which last execution was levied on some property of the defendants, and the same was sold on the 4th Monday of January, 1841, for five hundred and fifty dollars, and that amount credited on the execution. A short time subsequent to this sale this execution was again levied on a negro woman named Grace, as the property of the defendants, and she was sold on the 15th day of April, 1841, for three hundred and eighty-five dollars, which is the money claimed by the plaintiff in the junior execution. The money was brought into court at the April term, 1841, and a motion was made to have the same applied according to law; the plaintiff in the above entitled case introduced the above facts and records in support of their claim, and the plaintiff James Jones against William D. Amis, in support of his claim read to the court an execution against defendants issued on a judgment rendered in favor of the plaintiffs, December 31st, 1839. This *fi. fa.* was levied on the property of defendants in execution, and a forthcoming bond was given and perfected on the 16th day of March, 1840, and returned to the court at April term, 1840.

On the 26th day of May, 1840, an *alias fi. fa.* was issued on this forfeited bond to the sheriff, and thereupon the following indorsement appears, viz: "Received 29th of May, 1840. P. M. Grant, Sheriff. Levied this, and other fi. fas. against William D. Amis, to make the sheriff's fees, on the following negroes, to wit: Allen, Abram, Mary, Peter, Tom, and Peggy; advertised the same for sale on the 6th of October, 1840; no more property found in my county. P. M. Grant, Sheriff."—which execution was returned with the above indorsement to the October term, A. D. 1840. On the 8th day of March, A. D. 1841, a pluries fi. fa. was issued in this case, and was levied on the negro woman Grace, mentioned above as sold under the fi. fa. in favor of Bibb, use of Clayton & Holderness. A witness was introduced by the plaintiff Jones,

Bibb, use, &c. *v*. Jones.

by whom it was proven, that in -March, 1841, he being then a deputy sheriff, was directed by the plaintiff Jones to levy on the negro Grace, above named, who was then in the possession of S. F. Butterworth, Esq.; that he required the plaintiff to give a bond of indemnity, which was done; that he called on Butterworth, and was by him informed that said slave was his property; that subsequently Butterworth informed him that he was mistaken, and set up no claim to the negro. This was before the sale of the negro. The witness further stated, that some time before the sale the assignee of Clayton & Holderness called on him and directed him to sell said slave under the fi. fa. then in his hands in favor of Bibb, use of Clayton & Holderness, against Amis, and that he should claim the money. Upon hearing the motion, the court directed the money to be applied to the execution in favor of Jones, against Amis, which was some twelve months junior to the one in favor of Bibb against Amis *et al.*

BUTTERWORTH for plaintiff in error.

The court should have decided the money to be applied to the judgment and execution in favor of Bibb, use, &c. 1st, because the judgment rendered in this case is older by twelve months than the one in favor of Jones; it has a prior lien, and nothing has been done by which that lien can be lost or postponed. Not a term was suffered to pass without having a *fi. fa.* issued on the elder judgment; it was in the hands of the sheriff when the negro "Grace" was levied on and sold, and a sale was decided under it. It appears from the proof that Jones gave a bond of indemnity, and it may be concluded that he, although junior, is entitled to the money. To arrive at that conclusion, it must also appear that the sheriff applied to the plaintiff in the elder judgment for such a bond and was refused. This is not shown. There has been no lack of vigilance by Bibb. 2nd, there is a better reason why this money should have been applied to the elder judgment. It is because the junior judgment was satisfied before the sale of the negro Grace. The alias *fi. fa.* which was issued on the 26th day of May, on the forfeited bond in the case of Jones *v*. Amis, was levied on six slaves as the property of the defendant. This levy has never been disposed of, and is a satisfaction of the judgment.

Bibb, use, &c. *v.* Jones.

Cocke for defendant,

Insisted that the judgment of the court below was right :

1. Because by the diligence of Jones alone, the property was ferreted out and made liable.

2. Because Jones gave an indemnity bond for the seizure and sale of the property.

3. Because the execution of Jones is entitled to the proceeds of such sale; whether the property may or may not again be subject to the seizure and sale of Bibb's elder judgment.

Mr. Justice CLAYTON delivered the opinion of the court.

In our view, the facts do not raise the question of priority of judgment lien ; the circumstances narrow it down to a more special enquiry. The point of controversy turns upon the character of a levy made under the execution of the defendant Jones on the 27th of May, 1840, and out of the levy under which the money in dispute was made; both parties having executions against the same defendants. Bibb's judgment was the oldest.

On the execution of Jones, issued from the April term 1840, is the following return. " Received the 27th of May, 1840, levied this and other *fi. fas.* against W. D. Amis, to make the sheriff's fees, on six slaves, (naming them) and advertised the same for sale on the sixth of October, 1840 ; no more property found." It is not shown what disposition was made of the slaves so levied on. Another execution, the same under which the money was made, was issued, and it is insisted that this last execution was void, because the former one had been satisfied by the levy. We are not prepared to say that this would be the consequence, even if the levy had been made on property sufficient to satisfy the execution. This would create a presumptive satisfaction, which would however be subject to explanation, by proof that actual satisfaction had not been obtained. The subsequent execution after such levy might be quashed, but if the defendant takes no step for that purpose, and permits a sale to be made under it, an innocent purchaser obtains a good title. 3 How. 69; Saunders *v.* Caldwell, 1 Cowen, 643. This would not be the case, if it were void, for then the officer and all others acting under it would be trespassers.

But in this case not even a presumption of satisfaction is afford-

Bibb, use, &c. *v.* Jones.

ed.    The retnrn is, that the levy was made under that and other *fi. fas.*, to make the sheriff's fees. Why a levy was made of such limited character we are not informed ; but it would be to go far beyond what the record warrants, to hold this to be a presumption of satisfaction of the principal and interest of the execution.

This point disposed of, we are led to the consideration of the two executions which were in the hands of the sheriff, when the money was made which gave rise to the controversy.    The levy upon the execution of Jones is as follows ; " levied this *fi. fa.* on one negro woman named Grace, advertised and sold the same according to law, on the 5th day of April, 1841, for three hundred and eighty-five dollars, money brought into court to be applied, it having been claimed by plaintiff in *fi. fa.* 2592 : no more property of defendants." The *fi. fa.* mentioned in this return was that of Bibb; which was returned with the following indorsement: "Levied this *fi. fa.* on one negro woman Ausine and child, as the property of W. D. Amis, advertised and sold the same on Monday the 4th day of January, 1841, for five hundred and fifty dollars ; five hundred and thirty-seven dollars paid plaintiff, balance detained for cost.    Levied on a negro woman named Grace, under an execution No. 3215 of James Jones against Amis, advertised and sold the same on Monday the 5th of April, 1841, for three hundred and eighty-five dollars, money claimed by plaintiff in this execution, brought into court to be applied." The evidence of John K. Otey, a deputy sheriff, is contained in the bill of exceptions, but does not seem to vary the rights of the parties growing out of the above state of facts.

The latter part of the return above set out, on the execution of Bibb, is by no means perspicuous, but taken in connection with the return on the execution of Jones, we come to the conclusion that the execution of Bibb was not levied on the negro woman Grace, but that the money was claimed because of priority of judgment lien.    The words " levied under an execution of Jones, and money brought into court, &c," according to our understanding, imply that the levy was made under the execution of Jones, but that the owner of Bibb's execution claimed the money.    Under this state of facts there can be no doubt as to the decision. According to the decisions of this court, no creditor in a contest as

Bibb, use, &c. *v.* Jones.

to the application of money made under execution, can successfully claim it, but one whose execution was actually levied upon the property out of the sale of which the money was made. A levy and sale upon an execution under a junior judgment do no prejudice to the elder judgment creditor, the property sold remains in the same degree liable to his execution as before the sale. Hence he has no claim to the money made under an execution not his own.

The judgment is therefore affirmed.